# PROPOSED ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | | |
|---|---|---|
| In re:<br><br>MED-DEPOT, INC. d/b/a HOSPICE SOURCE,<br><br>    Debtor | § § § § § § § | Case No. 13-41815<br><br>(Chapter 11) |
| In re:<br><br>MED-DEPOT HOLDINGS, INC.,<br><br>Debtor | § § § § § § § § § § § | Case No. 13-41816<br><br>(Chapter 11)<br><br>JOINT ADMINISTRATION REQUESTED |

**INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS, (C) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, AND (D) GRANTING LIENS, SECURITY INTERESTS, AND SUPER-PRIORITY EXPENSE CLAIMS**

Before the Court is the interim hearing on the motion (the "***Motion***"),[1] filed by the above-captioned debtors and debtors-in-possession (together, the "***Debtors***"), seeking an interim order pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014:

    (a)    authorizing Debtors to use Cash Collateral[2] on an interim basis in accordance with the Budget attached hereto as "***Exhibit 1***" (the "***Budget***") pursuant to

---

[1] The term "***Motion***" shall mean that certain *Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Providing Adequate Protection to Pre-Petition Secured Lenders, (C) Authorizing Debtors to Obtain Postpetition Financing, and (D) Granting Liens, Security Interests, and Super-Priority Expense Claims* filed on July 26, 2013.

[2] The term "***Cash Collateral***" shall have the meaning as defined in 11 U.S.C. § 363(a).

1

Section 363(c) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(b)(2) and as set forth herein;

(b) authorizing and granting adequate protection to the Pre-Petition Secured Lenders (as hereinafter defined in ¶ 6), in the form of replacement liens, adequate protection claims, and adequate protection payments pursuant to Sections 361, 363(e), and 507(b);

(c) to accommodate any shortfall in available Cash Collateral by authorizing Debtors to obtain post-petition financing from Texas Capital Bank, National Association ("*TCB*"), Westbury Investment Partners SBIC, LP ("*Westbury*"), and Crothers Management, Inc. ("*Crothers*") (collectively, TCB, Westbury, and Crothers, the "*DIP Lenders*") in the total principal amount of approximately $550,000, of which approximately $50,000 to be funded by TCB, $250,000 to be funded by Westbury, and $250,000 to be funded by Crothers;

(d) authorizing the Debtors to execute and enter into the DIP Documents[3] and any and all such other documents contemplated therein with the DIP Lenders and to perform such other and further acts as may be required in connection with the DIP Documents;

(e) granting security interests, liens, and super-priority claims to the DIP Lenders, including (i) super-priority claims pursuant to Section 364(c)(1) of the Bankruptcy Code; (ii) senior first liens in the Debtors' pre-petition unencumbered assets, if any, pursuant to Section 364(c)(2); (iii) pursuant to Section 364(d)(1) first priority liens, *pari passu* with TCB's pre-petition liens, in the Debtors' pre-petition assets that are subject to TCB's pre-petition liens, subject only to the Carve-Out (as hereinafter defined in ¶28); and (iv) pursuant to Section 364(c)(3) junior liens on property of the estate that is subject to any prior existing, validly perfected and non-avoidable lines, if any, that are senior in priority to the liens of TCB's pre-petition liens; and

(f) granting such other and further related relief as detailed herein.

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1. *Final Hearing*. A final hearing on the Motion shall be held on _____, at _____.m, before this Court, in Suite 300B, United States Bankruptcy Court, 660 North Central Expressway, Plano, Texas 75074. Objections to the relief requested in the Motion shall be made in writing and filed with the Clerk of the Bankruptcy

---

[3] The term "*DIP Documents*" shall mean those certain Post-Petition Credit Agreements, Security Agreements, Revolving Promissory Notes and such other documents contemplated therein as more fully described in the Motion and approved by this Order to be entered into between the Debtors and the DIP Lenders.

Court, with a copy served upon the following parties so that any such objections are received on or before 5:00 p.m. (prevailing Central time) on _____:

   (a)   Proposed Counsel for the Debtors: Keith M. Aurzada, Bryan Cave LLP, 2200 Ross Ave., Suite 3300, Dallas, Texas 75201, keith.aurzada@bryancave.com, with copies to john.leininger@bryancave.com and jay.krystinik@bryancave.com;

   (b)   Counsel for TCB: Mark X. Mullin, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219, mark.mullin@haynesboone.com;

   (c)   Counsel for Westbury: Patrick Collins, Farrell Fritz, P.C., 1320 RXR Plaza, Uniondale, New York 11556, pcollins@farrellfritz.com;

   (d)   Counsel for Crothers: Jeff Baker, Evolve Capital, Ltd., 2200 Ross Ave., Suite 4050, Dallas, TX 75201, jeff@evolvecapital.com

   (e)   Office of United States Trustee: Marc Salitore, 110 N. College Ave., Suite 300, Tyler, Texas 75702, marc.f.salitore@usdoj.gov

   (f)   Counsel for the Official Committee of Unsecured Creditors: Not yet appointed.

   2.   *Jurisdiction*. This Court has core jurisdiction over these cases that were commenced on July 26, 2013 (the "**Petition Date**"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

   3.   *Disposition.* The Motion is granted, on an interim basis, in accordance with the terms of this Order. Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

   4.   *Notice*. Notice of the Motion, the relief requested herein, and the interim hearing was served by the Debtors via e-mail, facsimile, telephone, first class mail, and/or hand delivery, as appropriate, to (a) the Office of the United States Trustee for the Eastern District of Texas,

(b) all known or alleged secured creditors, (c) the 20 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), and (d) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

*USE OF CASH COLLATERAL*

5.   Good cause has been shown for the entry of this Order authorizing use of Cash Collateral.

6.   As more fully described in the Motion, prior to the Petition Date, TCB and Westbury in their capacities as pre-petition lenders, each (a "***Pre-Petition Secured Lender***") or collectively, (the "***Pre-Petition Secured Lenders***") made certain pre-petition loans and advances to the Debtors.

7.   The Debtors have requested that the Court authorize their use of Cash Collateral for the purposes set forth in the Budget.  The Debtors have an immediate need to use Cash Collateral to, among other things, preserve the value of the Debtors' assets, make payroll, and satisfy other working capital and general corporate purposes of the Debtors.  The use of Cash Collateral is necessary to ensure that the Debtors preserve and maintain the value of the Debtors' estates.

8.   Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.  Thus, the use of Cash Collateral in accordance with this Order is in the best interest of the Debtors' estates.

9.   The Pre-Petition Secured Lenders do not consent to the use of Cash Collateral except in accordance with the terms and conditions contained in this Order.  Subject to

compliance with the conditions of this Order, the Debtors are permitted to use Cash Collateral during the period covered by this Order and in the amounts set forth in the Budget.

10. The terms of this Order were negotiated in good faith and at arm's length between the Debtors and the Pre-Petition Secured Lenders.

11. The terms and conditions of the Debtors' proposed use of Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

12. This Order is entered pursuant to, and shall be construed and be consistent with, Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

13. Pending the Final Hearing, the Debtors are hereby authorized to use Cash Collateral only for the items listed, and in the amounts listed, in the Budget. Notwithstanding the foregoing, the Debtors' authority to use Cash Collateral shall terminate, upon notice from the Pre-Petition Lenders, if an Event of Default[4] occurs and is continuing under the DIP Documents.

*GRANTING OF ADEQUATE PROTECTION FOR USE OF CASH COLLATERAL*

14. *Adequate Protection Claims*. Because the Debtors' use of Cash Collateral may result in the diminution of the value of the Cash Collateral and the Pre-Petition Secured Lenders' interests therein, the Court hereby grants super-priority administrative expense claims against the Debtors' estates for the ratable benefit of the Pre-Petition Secured Lenders, as adequate protection pursuant to Section 507(a)(2) and 507(b) of the Bankruptcy Code, which claims shall be in the amount of any post-petition diminution in the value of the Pre-Petition Secured Lenders' interests in the Cash Collateral from and after the Petition Date (the "*Adequate Protection Claims*"). The Adequate Protection Claims shall have the same priority as the Super-

---

[4] The term "*Event of Default*" shall mean set forth in the DIP Documents.

Priority Claims (as hereinafter defined in ¶ 27), however, the Adequate Protection Claims shall be subject to the Carve-Out.

15. *Replacement Liens*. As additional adequate protection, and in order to secure the Adequate Protection Claims, the Pre-Petition Secured Lenders are granted replacement security interests in and liens upon all assets of the Debtors (the "*Replacement Liens*"). The Replacement Liens shall be subordinate to the DIP Liens and any prior existing, validly perfected and non-avoidable liens that are senior in priority to the liens of the Pre-Petition Lenders. The Replacement Liens granted to TCB have priority over the Replacement Liens granted to Westbury. The Replacement Liens are also subject to the Super-Priority Claims and Carve-Out. Notwithstanding anything to the contrary in this paragraph, the Replacement Liens shall exclude and not extend to any and all causes of action, if any, arising under Chapter 5 of the Bankruptcy Code.

16. *Adequate Protection Payments*. As additional adequate protection, the adequate protection payments proposed in the Budget to be made to certain Pre-Petition Secured Lenders (the "*Adequate Protection Payments*") are hereby approved and the Debtors are hereby authorized and directed to make the Adequate Protection Payments to the Pre-Petition Secured Lenders as detailed in the Budget.

17. The granting of adequate protection to the Pre-Petition Lenders by this Order is without prejudice to the rights of the Pre-Petition Lenders to seek additional adequate protection.

*FINDINGS REGARDING POST-PETITION DIP FINANCING*

18. Good cause has been shown for the entry of this Order.

19. As more fully described in the Motion and to accommodate any shortfall in available Cash Collateral, the Debtors have an immediate need to obtain post-petition financing

6

from the DIP Lenders (the "***DIP Financing***") to, among other things, preserve the value of the Debtors' assets, make payroll, and satisfy other working capital and general corporate purposes of the Debtors. The DIP Financing is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of the Debtors' estates.

20. The Debtors are unable to obtain post-petition financing from sources other than the DIP Lenders on more favorable terms than proposed in the DIP Documents. Specifically, the Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Further, the Debtors are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the granting of the DIP Liens (as hereinafter defined in ¶ 29) and the Super-Priority Claims that are provided by this Order and the DIP Documents.

21. The provisions and terms of the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

22. The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arms'-length among the Debtors and DIP Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, all loans made to the Debtors pursuant to the DIP Documents, owing to the DIP Lenders (collectively, the "***DIP Obligations***"), shall be deemed to have been extended by the DIP Lenders and their respective affiliates in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth in the Bankruptcy Code and this Order. Further, the DIP Lenders shall be entitled to the full protection

of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

23. The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the Debtors pre-petition property and Cash Collateral in accordance with this Order and the DIP Documents are in the best interest of the Debtors' estates.

*APPROVAL TO ENTER INTO DIP FINANCING AND DIP DOCUMENTS*

24. The Debtors are hereby authorized to enter into the DIP Documents to borrow up to an aggregate principal amount of up to $550,000.00, plus such additional amounts for applicable interest, costs, fees, and expenses, all in accordance with the terms of this Order and the DIP Documents to be executed. Such DIP Financing shall be funded in the amounts of approximately $50,000 by TCB, $250,000 by Westbury, and $250,000 by Crothers.

25. In furtherance of the foregoing and without the need for further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents and to pay all fees and expenses reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including, without limitation, (a) the execution, delivery and performance of the DIP Documents; (b) the payment of any costs and expenses as may become due and payable from time to time under the DIP Documents, all of which constitute and shall be included as DIP Obligations; (c) the performance of all other acts required under or in connection with the DIP Documents; and (d) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under any of the DIP Documents, in each such case in a form that is approved by the DIP

Lenders, and no further approval of this Court shall be required for any such amendments, waivers, consents or other modifications to any of the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications (i) shorten the term (as described in the DIP Documents) on terms and conditions other than those set forth in the DIP Documents, (ii) increase the amount or the rate of interest payable on the DIP Financing, or (iii) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive.

26. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

27. *Super-Priority Claims*. Except to the extent expressly set forth in this Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "*Super-Priority Claims*") against each of the Debtors with priority over all valid claims, administrative expenses, adequate protection claims, and all other valid claims against each of the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over

any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Super-Priority Claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (but excluding the proceeds or property recovered in respect of any and all causes of action arising under Chapter 5 of the Bankruptcy Code).

28. ***Carve-Out.*** Notwithstanding any other provision of this Order or the DIP Documents, the liens, security interests and superiority claims granted to the Pre-Petition Secured Lenders and the DIP Lenders pursuant to this Order and the DIP Documents shall be subject to the following limited and narrow carve-outs (collectively, the "***Carve-Out***"), for (a) prior to the occurrence of an Event of Default or the Termination Date[5], the payment of allowed professional fees and expenses by the professionals retained pursuant to Sections 327, 363, or 1103(a) of the Bankruptcy Code by the Debtors and, if appointed, the Official Committee of Unsecured Creditors in these Chapter 11 Cases (collectively, the "***Estate Professionals***") shall only be paid to Estate Professionals in the amounts actually incurred by each such Estate Professional, but in no event shall such amounts exceed the amounts detailed in the Budget, (b) upon the occurrence of an Event of Default or the Termination Date, the payment of subsequently incurred fees and expenses by the Estate Professionals in a total amount not to exceed $50,000, plus any such allowed professional fees that are accrued and unpaid (including any holdbacks) as of the earlier of an Event of Default or the Termination Date as authorized in the Budget, minus any retainers still being held and available for application to the outstanding

---

[5] The term "***Termination Date***" shall have the meaning set forth in the DIP Documents. For purposes of this Order, in no event shall the Termination Date extend beyond November 23, 2013 (which is 120 days from the Petition Date) without the express consent of each of the DIP Lenders.

10

professional fees and expenses, provided that nothing herein shall be deemed a waiver of the rights of the Pre-Petition Secured Lenders or DIP Lenders to object to any requests for allowance of any such fees or expenses, and (c) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court.  The Carve-Out shall not be available to pay any other claims that are or may be senior to or *pari passu* with the Carve-Out or any professional fees and expenses of a chapter 7 or chapter 11 trustee or any fees and/or disbursements of any bankruptcy professionals incurred in connection with or related to the filing or prosecution of any claims or proceedings of any kind against the Pre-Petition Secured Lenders or the DIP Lenders.

29. **_DIP Liens_**. As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lenders of any collateral, the following security interests and liens are hereby granted by the Debtors to the DIP Lenders (all property identified in clauses (a), (b), (c) and (d) below being collectively referred to as the "**_DIP Collateral_**"), subject only to the Carve-Out (all such liens and security interests granted to the DIP Lenders, pursuant to this Order and the DIP Documents, the "**_DIP Liens_**"):

(a) Pursuant to sections 364(c)(2), valid, binding, enforceable, non-avoidable and automatically perfected, security interests and liens upon all property of the estate that is not otherwise subject to a valid, perfected pre-petition lien, and any and all proceeds thereof.

(b) Pursuant to sections 364(c)(2) and (3), valid, binding, enforceable, non-avoidable and automatically perfected, security interests and liens upon all existing and after acquired tangible and intangible personal property of the Debtors that is subject to valid, perfected pre-petition liens and any and all proceeds thereof.  Such DIP Liens shall be equal in priority with the first priority prepetition liens held by TCB.  Such DIP Liens, however, shall be subject to any prior existing, validly

11

        perfected and non-avoidable liens that are senior in priority to TCB's pre-petition liens.

    (c)    Pursuant to section 364(d)(1), the DIP Liens shall be senior in priority to the prepetition second priority liens held by Westbury and any other alleged secured creditor.

    (d)    Notwithstanding anything to the contrary herein above in this paragraph, the DIP Liens shall exclude and not extend to any and all causes of action, if any, arising under Chapter 5 of the Bankruptcy Code.

30.    ***Remedies After Event of Default***. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lenders to exercise any and all remedies under the DIP Documents and applicable law, including setoff and foreclosure, upon five (5) business days written notice to the Debtors, the United States Trustee and, if appointed, the Official Committee of Unsecured Creditors in the Bankruptcy Case unless such actions are stayed by the Bankruptcy Court or other court of competent jurisdiction.

31.    ***Perfection of the DIP Liens***. The DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not any of the DIP Lenders, each in their sole discretion, chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order. The Debtors shall execute and deliver to the DIP Lenders all such agreements, financing statements, instruments and other documents as the DIP Lenders may reasonably request to more fully evidence, confirm, validate, perfect, preserve

and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date. Pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtors, or any guarantor to pledge, grant, sell, or otherwise transfer any such interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting the DIP Lenders a security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Debtors in favor of the DIP Lenders in accordance with the terms of the DIP Documents. Notwithstanding any other provision in this Order, no security interests or liens established pursuant to this Order shall attach to any property that is not property of the Debtors' bankruptcy estates. Furthermore, this Order is without prejudice to the rights of parties in interest to challenge whether property is property of the Debtors' bankruptcy estates.

### *PRESERVATION OF RIGHTS GRANTED UNDER THIS ORDER*

32.     Save and except for the allowance of the claims and liens of the Pre-Petition Secured Lenders, no claim or lien having a priority senior to or *pari passu* with those granted by this Order or the DIP Documents to the DIP Lenders shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding.

33.     It shall constitute an Event of Default under the DIP Documents if any order is entered converting or dismissing any of these cases. If an order dismissing any of these cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Super-

Priority Claims and the DIP Liens and the provisions with respect to the Carve-Out shall continue in full force and effect and shall maintain their priorities as provided in this Order until all the DIP Obligations shall have been indefeasibly paid in full in cash, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, Carve Out and security interests granted herein.

34. If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the Carve-Out or (a) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lenders of the effective date of such reversal, stay, modification or vacatur, or (b) the validity, priority or enforceability of the DIP Liens. Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtors to the DIP Lenders prior to the actual receipt of written notice by the DIP Lenders of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all DIP Obligations.

35. Until all DIP Obligations are indefeasibly paid in full in cash, and except as expressly provided in this Order or in the DIP Documents, the DIP Liens, and the Super-Priority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order and the DIP Documents shall, in each case, survive, and shall not be modified, impaired or discharged by (a) the entry of an order converting any of these cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of these cases or by any other act or omission, or (b) the entry of an order confirming a plan of reorganization in any of the cases, unless such DIP Lender

14

approves other treatment in such a plan of reorganization. In addition, the Carve Out shall survive each of the conditions described in clauses (a) and (b) herein above subject to the terms and provisions of this Order. The terms and provisions of this Order and the DIP Documents shall continue in these cases, in any successor cases if the cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens and the Super-Priority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

36. ***Limitation on Use of the DIP Financing Proceeds and Collateral***. The Debtors shall use the proceeds of the DIP Financing solely as provided by this Order and in the DIP Documents, and in accordance with the Budget attached hereto. Notwithstanding anything herein or in any other order of this Court to the contrary, no sums of Cash Collateral or proceeds under the DIP Financing, or the Carve-Out may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation against the Pre-Petition Secured Lenders or the DIP Lenders or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by any of the Pre-Petition Secured Lenders and/or the DIP Lenders or asserting any defense, claim, counterclaim, or offset with respect to the Pre-Petition Secured Lenders' claims and/or liens and/or the DIP Lenders' DIP Obligations, (b) to prevent, hinder or otherwise delay the DIP Lenders' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents, (c) to seek to modify any of the rights granted to the Pre-Petition Secured Lenders or DIP Lenders under this Order or the DIP Documents, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court, and (ii) permitted under the DIP Documents.

37. ***Limitation on Charging Expenses Against Collateral.***  No costs or expenses of administration which have been or may be incurred in the Debtors' cases shall be charged against the Cash Collateral, the DIP Collateral, the Pre-Petition Secured Lenders, the DIP Lenders, or any of their respective claims pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the consent of the Pre-Petition Secured Lenders and/or the DIP Lenders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Pre-Petition Secured Lenders or DIP Lenders.

38. ***Investigation Deadline.***  The Pre-Petition Secured Lenders and DIP Lenders reserve the right, and intend to request in a final order approving the use of Cash Collateral and the DIP Financing, a deadline of September 24, 2013 (representing sixty [60] days from the Petition Date) for the Debtors, any creditors, parties-in-interest, and/or the official committee of unsecured creditors, if appointed, to file an adversary proceeding or contested matter with this Court seeking to object to, challenge, contest, or otherwise invalidate or reduce the validity, enforceability, perfection, extent, or priority of the claims and liens of the Pre-Petition Secured Lenders and DIP Lenders.

39. ***Exculpation***. Nothing in this Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the Pre-Petition Secured Lenders or the DIP Lenders any liability for any claims arising from the pre-petition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as each Pre-Petition Secured Lenders and each DIP Lender complies with its obligations under this Order and the DIP Documents, and obligations, if any, under applicable law (including the Bankruptcy Code) (a) each such Pre-Petition Secured Lender and DIP Lender shall not, in any way or manner, be liable

or responsible for (i) the safekeeping of the Pre-Petition Collateral or DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Pre-Petition Collateral and/or DIP Collateral shall be borne by the Debtors.

40. ***Order Governs***. In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

41. ***Retention of Jurisdiction***. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

42. ***Binding Effect; Successors and Assigns***. The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon the Debtors, all creditors, and parties-in-interest in the Debtors' cases, any official committee of unsecured creditors that may be appointed, and each of their respective successors and assigns and the DIP Documents and the provisions of this Order shall inure to the benefit of the Pre-Petition Secured Lenders, the DIP Lenders, the Debtors and their respective successors and assigns, provided, however, that the Pre-Petition Secured Lenders and DIP Lenders shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

43. ***Limitation of Liability***. In determining to authorize the use of Cash Collateral or to make any loan under the DIP Documents, or in exercising any rights or remedies as and when

permitted pursuant to this Order or the DIP Documents, the Pre-Petition Secured Lenders and the DIP Lenders shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability act of 1980 or any similar federal or state statute).

44.     *Effectiveness*. This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

45.     *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

 

```
                                        _____
                                        HONORABLE BRENDA T. RHOADES
                                        CHIEF U.S. BANKRUPTCY JUDGE
```