IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MED-DEPOT, INC. D/B/A HOSPICE | § | |
| SOURCE, *ET AL.*, | § | Jointly Administered Under |
| | § | Case No. 13-41815 |
| | § | |
| Debtors. | § | |

## JOINT PLAN OF REORGANIZATION

Med-Depot, Inc. d/b/a Hospice Source and Med-Depot Holdings, Inc. (the "Debtors") respectfully propose the following Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code.

## ARTICLE 1
## DEFINED TERMS AND RULES OF INTERPRETATION

A.    Defined Terms

"**Administrative Claims Bar Date**" means for Administrative Claims that may have arisen or accrued other than in the ordinary course of business of the Debtors prior to the Effective Date, no later than 5:00 p.m. (CST) on the day which is thirty (30) days after the Effective Date.

"**Administrative Claim**" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 327, 328, 330(a) or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date; and (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code.

"**Allowed**" means with respect to Claims:  (a) any Claim proof of which is timely filed by the applicable Claims Bar Date; (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which not Proof of Claim has been timely filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by Final Order.  Except for a Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been filed, is not considered Allowed.

"**Amended and Restated TCB Facility**" shall have the meaning set forth in Article III, Section C, paragraph 1(b) of the Plan.

"**Amended and Restated TCB Revolver Note**" shall have the meaning set forth in Article III, Section C, paragraph 1(b) of the Plan.

"**Amended and Restated TCB Term Note**" shall have the meaning set forth in Article III, Section C, paragraph 1(b) of the Plan.

"**Avoidance Actions**" means any and all claims and causes of action which any of the Debtors, the debtors-in-possession, the Estates, or other appropriate party in interest has asserted or may assert under sections 544 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"**Balloting Agent**" means John C. Leininger, located at 2200 Ross Ave., Suite 3300, Dallas, Texas 75201.

"**Ballots**" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent before the Votign Deadline.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the Eastern District of Texas, the United States District Court for the Eastern District of Texas.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases and the local rules of the Bankruptcy Court.

"**Business Day**" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

"**Cash**" means legal tender of the United States of America.

"**Causes of Action**" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake,

duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

"**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court under Case No. 13-41815.

"**Claim**" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

"**Claims Bar Date**" means the dates to be established by the Bankruptcy Court by which Proofs of Claim must be filed.

"**Claims Objection Bar Date**" means, for each Claim, the later of (a) 60 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

"**CMI DIP Credit Agreement**" means that certain Post Petition Credit Agreement dated July ___, 2013, executed by and among Borrowers and CMI.

"**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Contribution Agreement**" means an agreement to be entered into by Westbury, CMI and the Reorganized Debtor, which shall specify the terms and conditions under which Westbury and CMI will make the contributions to the Reorganized Debtor specified under Section 4.2 and 4.3 hereof.

"**CMI**" means Crothers Management, Inc.

"**D&O Liability Insurance Policies**" means all insurance polices for directors', managers, and officers' liability maintained by the Debtors as of the Petition Date.

"**Debtors**" means Med-Depot and Holdings, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

"**DIP Collateral Agent**" means TCB, in its capacity as agent for the DIP Lenders under the DIP Credit Agreements.

"**DIP Credit Agreements**" means collectively, the CMI DIP Credit Agreement, the TCB DIP Credit Agreement, and the Westbury DIP Credit Agreement.

"**DIP Facility**" means, collectively, the debtor-in-possession financing entered into pursuant to the DIP Credit Agreements and as approved by the DIP Order.

"**DIP Lenders**" means CMI, TCB, and Westbury.

"**DIP Orders**" mean, collectively, the Interim DIP Order and Final DIP Order.

"**Disclosure Statement**" means the Disclosure Statement for the Debtors' Joint Plan of Reorganization, dated July 30, 2013, including all exhibits and schedules thereto and references therein that related to the Plan that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

"**Disputed**" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

"**Distribution Date**" means the date that is as soon as practicable after the Effective Date.

"**Effective Date**" means the date selected by the Debtors, that is the first Business Day after the entry of the Confirmation Order on which (i) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Debtors elect in their sole discretion, to consummate the Plan on an earlier date if an appeal is timely filed; and (ii) all conditions specified in Article 9 have been satisfied or waived.

"**Equity Interest**" means any equity interest in a Debtor that existed immediately prior to the Petition Date.

"**Estate**" means the estate of each Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

"**Evolve**" means Evolve Capital, Ltd. and/or its affiliates and designees.

"**Exculpated Claims**" means any claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out of court restructuring efforts, the Debtors' Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of the New Equity, or the distribution of property under the Plan or any other agreement; provided, however, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct. For the avoidance of doubt, no Claim, obligation or liability expressly set forth in, arising under, or preserved by the Plan constitutes an Exculpated Claim.

"**Exculpated Parties**" means each of: (a) the Debtors, the Reorganized Debtors and their Affiliates, (b) the DIP Collateral Agent and the DIP Lenders; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), such Entities' subsidiaries, affiliates, managed accounts or funds, officers, trustees, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals; provided, however, that with respect to officers and directors of the Debtors, only the current directors and officers of the Debtors, any additional officers and directors as of the Effective Date.

"**Executory Contracts and Unexpired Leases**" means any contract or lease between or among one or more of the Debtors and a third party that is an "executory contract" or unexpired lease as such terms are used in section 365 of the Bankruptcy Code.

"**Fee Claim**" means a claim for compensation made by a Professional.

"**Fee Claim Bar Date**" means the date that is forty-five (45) days after the Effective Date.

"**File**" or "**Filed**" or "**Filing**" means, with respect to any pleadings, the entry of such pleading on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

"**Final DIP Order**" means that certain Final Order (a) Authorizing Use of Cash Collateral, (b) Providing Adequate Protection to Pre-Petition Secured Lenders, (c) Authorizing Debtors to Obtain Post petition financing, and (d) Granting Liens, Security Interests, and Super-Priority Expense Claims entered by the Bankruptcy Court on August ___, 2013, [Doc. No. ____].

"**Final Order**"  means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

"**General Unsecured Claims**" means claims against the Debtors that are not Administrative Claims, Fee Claims, Secured Claims, Priority Tax Claims, Other Priority Claims, or Intercompany Claim.  General Unsecured Claims specifically include any deficiency claim of Westbury and the Seller Debt.

"**Holdings**" means Med-Depot Holdings, Inc.

"**Intercompany Claim**" means a Claim held by a Debtor against another Debtor.

"**Intercreditor Agreement**" means certain intercreditor agreement dated as of May 16, 2011, by and between the Debtors as borrowers, TCB as senior lender, and Westbury as junior lender.

"**Interim DIP Order**" means that certain Interim Order (a) Authorizing Use of Cash Collateral, (b) Providing Adequate Protection to Pre-Petition Secured Lenders, (c) Authorizing Debtors to Obtain Post Petition Financing, and (d) Granting Liens, Security Interests, and Super-Priority Expense Claims entered by the Bankruptcy Court on July 31, 2012 [Doc. No. ___].

"**Invacare**" means Invacare Credit Corporation.

"**Invacare Agreement**" means that certain Lease Agreement dated as of March 12, 2012, by and between Med-Depot as lessee/grantor and Invacare as lessor/secured party.

"**Junior Subordinated Debt**" means the junior subordinated debt of Holdings.

"**Med-Depot**" means Med-Depot, Inc. d/b/a Hospice Source.

"**New Equity**" means the new common stock, par value $.001 per share of Reorganized Debtor issued on the Effective Date.

"**Other Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (i) an Administrative Claim; or (b) a Priority Tax Claim.

"**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means July 26, 2013.

"**Plan**" means this Joint Plan of Reorganization.

"**Preferred A Stock**" means Series A Preferred Stock of the Reorganized Debtor with a $2,000,000 stated value which shall have certain rights and privileges, including but not limited to (i) ranking senior in priority to all other shares of preferred stock, common stock or other capital stock of the Reorganized Debtor, (ii) the right to receive upon sale or liquidation of the Reorganized Debtor, prior to and in preference to all other holders of equity ranking junior to the Series A Preferred Stock, an amount per share equal to four (4) times the stated value thereof, and (iii) non-voting and non-convertible.

"**Preferred B Stock**" means Series B Preferred Stock of the Reorganized Debtor with a $12,500,000 stated value and which shall have certain rights and privileges, including but not limited to (i) ranking senior in priority to all other shares of preferred stock, common stock or other capital stock of the Reorganized Debtor other than the Preferred A Stock, to which it shall be junior, (ii) the right to receive a non-compounding dividend accruing at an annual rate of eight percent (8%) per share on the stated value thereof, and (iii) non-voting and non-convetible.

"**Preferred C Stock**" means Series C Preferred Stock of the Reorganized Debtor which shall have certain rights and privileges, including but not limited to (i) ranking senior in priority to all other shares of preferred stock, common stock or other capital stock of the Reorganized Debtor other than the Series A Preferred Stock and Series B Preferred Stock, to each of which it shall be junior, (ii) no right to receive dividends, and (iii) non-voting and non-convertible.

"**Priority Tax Claim**" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means an Entity: (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

"**Professional**" means an Entity: (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Proof of Claim**" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

"**Released Parties**" means each of: (a) TCB, Westbury, the DIP Agent and the DIP Lenders and (b) in each case in their capacity as such and only if serving in such capacity, the Debtors' and the Reorganized Debtors' officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals; provided, however, that with respect to officers and directors of the Debtors, only the current directors and officers of the Debtors, any additional officers and directors serving as of the Effective Date and the Citadel Directors shall be deemed "Released Parties."

"**Reorganized Debtor**" means Med-Depot from and after the Effective Date.

"**Reorganized Debtor Notice Person**" means Jeff West at 1200 Commerce Street, Suite 100 Plano, Texas 75093.

"**Schedules**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

"**Seller Debt**" means the indebtedness of Holdings owing to Kenneth Baker, Norman Foster and James Griffin in connection with the purchase of Med Depot by Holdings in the aggregate amount of $1,200,000.

"**TCB**" means Texas Capital Bank, National Association.

"**TCB Allowed Class 1 Claim**" shall have the meaning set forth in Article III, Section C, paragraph 1(b) of the Plan.

"**TCB DIP Credit Agreement**" means that certain Post Petition Credit Agreement dated July ___, 2013, executed by and among Borrowers and TCB.

"**TCB Revolving Debt**" means TCB's Claim based on that certain Amended and Restated Revolving Promissory Note dated May 26, 2011, executed by the Debtors as borrowers payable to the order of TCB as lender, in the original principal amount of $1,500,000.

"**TCB Security Agreements**" means (i) that certain Amended and Restated Security Agreement dated as of May 26, 2011, by and between Med-Depot, as grantor and TCB as secured party, and (ii) that certain Amended and Restated Security Agreement, dated as of May 26, 2011, by and between Holdings as Grantor and TCB as secured party.

"**TCB Term Debt**" means TCB's Claim based on that certain Term Promissory Note dated May 26, 2011, executed by the Debtors as borrowers payable to the order of TCB as lender, in the original principal amount of $3,000,000.

"**U.S. Trustee**" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Eastern District of Texas.

"**Voting Deadline**" means 5:00 p.m. (CST) on _____, 2013.

"**Westbury**" means Westbury Investment Partners SBIC, LP.

"**Westbury DIP Credit Agreement**" means that certain Post Petition Credit Agreement dated July ___, 2013, executed by and among Borrowers and Westbury.

"**Westbury Note**" means that certain Secured Term Loan Note, dated as of May 26, 2011 between Med-Depot as borrower and Westbury as lender, in the stated principal sum of $10,500,000.

"**Westbury Security Agreement**" means that certain Credit and Security Agreement, dated as of May 26, 2011, by and among Med-Depot as borrower, Holdings as guarantor, and Westbury as lender and agent.

"**Westbury Stock Pledge Agreement**" means that certain stock pledge agreement dated as of May 26, 2011, by and between Holdings, as grantor and Westbury as agent and secured party.

B.      Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a

part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Texas shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

## ARTICLE 2
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Other Priority Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      Administrative Claims

1.      General Administrative Claims

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtors agree to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of: (i) on or as soon as reasonably practicable after the Effective Date, (ii) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, and (iii) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order, including, without limitation, all Claims by the Prepetition Agents pursuant to the DIP Order and all Claims Allowed under this Plan.

B.      Professional Compensation

1.      Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date; provided that the Reorganized Debtors may pay retained Professionals or other Entities in the ordinary course of business after the Confirmation Date without further Bankruptcy Court order. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than the earlier of twenty-four (24) days after the filing or seventy-five (75) days after the Effective Date.

2.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

C.      Administrative Claim Bar Date

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtors no later than forty-five (45) days after the Effective Date. Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be filed and served on the Reorganized Debtors and the requesting party no later than the earlier of twenty-four (24) days after the filing or seventy-five (75) days after the Effective Date.

1.      Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtors, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Effective Date; or (3) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

2.    Other Priority Claims

Each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtors, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Other Priority Claim; (2) Cash in an aggregate amount of such Allowed Other Priority Claim payable in installment payments over a period of time not to exceed five years after the Effective Date; or (3) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

3.    Statutory Fees

On the Distribution Date, the Reorganized Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Confirmation Date, the Reorganized Debtors shall pay the applicable U.S. Trustee fees until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    Classification of Claims and Interests

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in each of the Debtors. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.

B.    Summary of Classification

The following table classifies Claims against and Equity Interests in each Debtor collectively, for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Equity Interest or any portion thereof qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | TCB Secured Claim | Impaired | Entitled to Vote |
| | | | |

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 2 | Westbury Secured Claim | Impaired | Entitled to Vote |
| 3 | Invacare Claim | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Impaired | Entitled to Vote |
| 5 | Junior Subordinated Debt | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | No Distribution | Deemed to Reject |
| 8 | Equity Interests | No Distribution | Deemed to Reject |

2.      **Treatment of Claims and Interests**

To the extent Class of Claims contains Allowed Claims or Allowed Interests with respect to the Debtors, the treatment provided to each Class for distribution purposes is specified below:

**Class 1- TCB Secured Claim**

1.      Classification:   Class 1 consists of the TCB Term Debt and the TCB Revolving Debt

2.      Allowance:   The Claim in Class 1 shall be Allowed and deemed to be Allowed in an amount to be determined prior to the Effective Date (expected to be approximately $4,000,000) (the "***TCB Allowed Class 1 Claim***").

3.      As of the Effective Date, to refinance the TCB Term Debt and the TCB Revolving Debt, the Debtors shall execute and deliver to TCB that certain Second Amended and Restated Credit Agreement, dated as of the Effective Date, by and among Debtors and TCB, which agreement shall be in amendment, restatement, renewal, extension, and increase of the TCB Revolving Debt and the TCB Term Debt (the "***Amended and Restated TCB Facility***").   The Amended and Restated TCB Facility shall include, without limitation, (i) a term loan in the full amount of the TCB Term Debt outstanding as of the Effective Date plus an additional amount of

$500,000, such term loan to be evidenced by that certain Amended and Restated Term Promissory Note, executed by Debtors, payable to TCB in the original principal amount of the aggregate amount of the TCB Revolving Debt and the TCB Term Debt (the "***Amended and Restated TCB Term Note***") and (ii) a revolving line of credit in a principal amount outstanding at any given time not to exceed $1,500,000 or such lesser amounts as further detailed in the documents evidencing the Amended and Restated TCB Facility, such revolving line of credit to be evidenced by that certain Second Amended and Restated Revolving Promissory Note, executed by Debtors, payable to TCB in the amount of such revolving line of credit (the "***Amended and Restated TCB Revolver Note***")

4.     Cash Payment on Effective Date.  The Debtors shall make a cash payment to TCB on the Effective Date in the amount of $217,280.21 representing a repayment of the amount of overdrafts funded under the TCB Revolving Debt as of the Petition Date.

5.     Repayment of the Amended and Restated TCB Facility:  In full and final satisfaction, discharge, and release of the Amended and Restated TCB Facility, the Reorganized Debtor and Holdings, jointly and severally, shall pay the Amended and Restated TCB Facility as follows:

   (1)     Interest.  Interest shall accrue on the Amended and Restated TCB Facility on and after the Effective Date at a fluctuating rate of interest as set forth in each of the Amended and Restated TCB Revolver Note and the Amended and Restated TCB Term Note, but in no event less than [five and one half percent (5.50%)] per annum. .

   (2)     Amortization.  The obligations with respect to the Amended and Restated TCB Term Note shall be amortized over four (4) years.

   (3)     Final Stated maturity.  The final stated maturity date of the Amended and Restated TCB Term Note and the Amended and Restated TCB Revolver Note shall be as set forth in the documentation evidencing the Amended and Restated TCB Facility.

   (4)     Payments.  Payments of principal and interest with respect to the obligations of the Debtors under the Amended and Restated TCB Term Note and payments of interest with respect to the obligations of Debtors under the Amended and Restated TCB Revolver Note shall commence on the first day of the first month following the Effective Date and shall continue monthly thereafter.  The first payments shall be adjusted to include all interest accruing since the Effective Date.

(5)     Retention of Lien.  On the Effective Date, and without the need for further order, document, or action, all liens, interests and encumbrances provided for under the TCB Security Agreements shall be ratified and validated, and shall survive the confirmation of the Plan and shall represent first priority, valid, and perfected liens, interests, and encumbrances against the property of the Reorganized Debtors without any further action by any party.  Any new lien or security interest documents executed by the Reorganized Debtors under the Plan on account of the Amended and Restated TCB Facility shall related back for all purposes to the date of the original recording and filing of the TCB Security Agreements.  TCB may, but is not required to, file or record this Plan and the Confirmation Order with any applicable governmental entity as conclusive proof and notice to the world of the ratification and validation of the existence, validity, extent and priority of its liens and security interests as of the Effective Date, securing the Amended and Restated TCB Facility.

(6)     Default and Cure.  In the event the Reorganized Debtors fail to comply with any payment obligation to TCB under this Class 1 of the Plan and/or the Amended and Restated TCB Facility, TCB may transmit notice of such failure to the Reorganized Debtors by transmitting the same, by overnight mail, or any other nationally recognized overnight courier, to the Reorganized Debtors Notice Person.  In the event the Reorganized Debtors do not cure such default within ten (10) Business Days of transmittal of such notice, the Reorganized Debtors shall be in default of their obligations under the Plan and the Amended and Restated TCB Facility and TCB may exercise any and all rights, claims, liens, and interests against the Reorganized Debtors and their property.

(7)     Prepayment.  Notwithstanding anything contained to the contrary in the documents evidencing the Amended and Restated TCB Facility, the Reorganized Debtors may prepay the Amended and Restated TCB Facility in part or in full at any time without penalty.

(8)     Release of Liens.  Promptly upon payment of all obligations to TCB under the Amended and Restated TCB Facility and the termination of any advance commitments of TCB to advance funds thereunder, TCB shall execute and shall record, or shall permit to be recorded, one or more release of lien and security interest documents releasing and discharging all of its liens, claims, interests, and encumbrances securing the Amended and Restated TCB Facility.

6.     Release of TCB by Debtors.  Each of the Debtors hereby acknowledges that the TCB Allowed Class 1 Claims are absolute and unconditional without any right of

recession, setoff, counterclaim, defense, offset, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of its liability to repay the TCB Allowed Class 1 Claims or to seek affirmative relief or damages of any kind or nature from TCB.  The Debtors and their Estates hereby voluntarily and knowingly release and forever discharge TCB, and each of its predecessors, agents, employees, successors, officers, directors, principals, employees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals (collectively, the "*TCB Released Parties*"), from any and all possible claims, demands, actions, causes of action, damages, costs, expenses, and liabilities whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, fixed, contingent, or conditional, at law or in equity, originating in whole or in part on or before the effective date, which the debtors may now or hereafter have against the TCB Released Parties, if any, and irrespective of whether any suck claims arise out of contract, tort, violation of law or regulations, or otherwise, and arising from any obligations under or in respect of the TCB Allowed Class 1 Claims, including, without limitation, any contracting for, charging, taking, reserving, collecting, or receiving interest in excess of the highest lawful rate applicable, and/or the exercise of any rights and remedies under any document evidencing any of the TCB Allowed Class 1 Claims.

7.    Impairment.  Class 1 is Impaired and, therefore, is entitled to vote to accept or reject the Plan.

### Class 2 - Westbury Secured Claim.

(a)    Classification:  Class 2 consists of Westbury's secured claim for the amounts owed by the Debtors to Westbury under the Westbury Note and the Westbury Credit Agreement.

(b)    Treatment:  In full satisfaction of its Allowed Class 2 Claim, Westbury shall receive the Preferred B Stock.

(c)    Impairment.  Class 2 is Impaired and, therefore, is entitled to vote to accept or reject the Plan.

### Class 3 – Invacare Secured Claim

(a)    Classification:  Class 3 consists of the Invacare Claim.

(b)    Treatment:  In the event that Invacare casts a vote in favor of the Plan and agrees to extend post-confirmation credit to the Reorganized Debtor, its Allowed Class 3 Claim shall be amortized over four (4) years at five percent (5%) interest.  In exchange for the foregoing, the Debtors will release any causes of action they have against Invacare under chapter 5 of the Bankruptcy Code and applicable state law.

In the event that Invacare elects to vote against the Plan and/or refuses to extend post-confirmation credit to Reorganized Med-Depot, its Allowed Class 3 Claim shall be amortized over four (4) years at five percent (5%). Further, the Debtors will litigate all causes of action the estate has against Invacare under Chapter 5 of the Bankruptcy Code and applicable state law.

Retention of Liens:  On the Effective Date, and without the need for further order, document, or action, all liens, interests and encumbrances provided for under the Invacare Agreement, to the extent Allowed by a Final Order, shall be ratified and validated, and shall survive the confirmation of the Plan and shall attach to Reorganized Med-Depot's property to the same extent and priority as such liens held before the Petition Date.

(c)     Impairment:  Class 3 is Impaired and, therefore, is entitled to vote to accept or reject the Plan.

## Class 4 – Other Secured Claims

(a)     Classification:  Class 4 Consists of all other Allowed Secured Claims.

(b)     Treatment:  Each Allowed Other Secured Claim against the Debtors shall be reinstated, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such claim prior to the state maturity of such claim from and after the occurrence of an event of default.  The maturity date for all Allowed Other Secured Claims shall be extended by five (5) months.

(c)     Retention of Liens:  Holders of Allowed Other Secured Claims shall retain any and all validly attached and properly perfected liens that they possessed on the Petition Date.

(d)     Impairment: Allowed Class 4 Claims are Impaired and, therefore the Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

## Class 5 - Junior Subordinated Debt

(a)     Classification.  Class 5 consists of all Junior Subordinated Debt Claims.

(b)     Treatment.  In full satisfaction, settlement and discharge of the Allowed Junior Subordinated Debt Claims, the holders of each Allowed Junior Subordinated Debt Claim shall receive a pro-rata share of the Preferred C Stock.

(c)     Impairment.  Class 5 is Impaired and, therefore is entitled to vote to accept or reject the Plan.

## Class 6 – General Unsecured Claims

(a)     Classification.  Class 6 consists of all General Unsecured Claims.

(b)    Treatment.  In full satisfaction, settlement and discharge of the Allowed General Unsecured Claims, the holder of each Allowed General Unsecured Claim shall receive its pro-rata share of $200,000 on the Distribution Date.

(c)    Impairment.  Class 6 is Impaired and, therefore is entitled to vote to accept or reject the Plan.

**Class 7 – Intercompany Claims**

(a)    Classification.  Class 7 consists of all Intercompany Claims.

(b)    Treatment.  All Intercompany Claims shall be cancelled and the Holders of Intercompany Claims shall receive no property or Distribution under the Plan.

(c)    Impairment.  Class 7 will receive nothing under the Plan and therefore are deemed to reject the Plan.

**Class 8 – Equity Interests**

(a)    Classification.  Class 8 consists of Equity Interests in all of the Debtors.

(b)    Treatment.  All Equity Interests shall be canceled and holders of Equity Interest shall receive no property or Distribution under the Plan.

(c)    Impairment.  Class 8 will receive nothing under the Plan and therefore are deemed to reject the Plan.

**ARTICLE 4**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    Substantive Consolidation

For purposes of distribution under the Plan, the estates of the Debtors will be substantively consolidated.

B.    Conversion of DIP Facility Evidenced by the CMI DIP Credit Agreement and the Westbury DIP Credit Agreement to New Equity

On the Effective Date the obligations evidenced by the CMI DIP Credit Agreement and the Westbury DIP Credit Agreement shall each be contributed to the Reorganized Debtor pursuant to the terms of the Contribution Agreement for one-hundred percent (100%) of the New Equity and Preferred A Stock having a stated value of $500,000 in each case pro rata based on the principal outstanding under their respective DIP Facilities.  On the Effective Date CMI and Westbury shall enter into a shareholder agreement that, among other things, provides for: (i) CMI and its affiliates to elect two members to the Reorganized Debtor's board of directors and for Westbury to elect one member of the Reorganized Debtor's board of directors; and (ii) setting forth the transactions that require unanimous approval of the Reorganized Debtor's board of directors.

C.       Exit Capital Contributions

On the Effective Date CMI will contribute pursuant to the Contribution Agreement $500,000 to the Reorganized Debtor in exchange for Preferred A Stock having an equivalent value. On the Effective Date Westbury will contribute pursuant to the Contribution Agreement $1,000,000 to the Reorganized Debtor in exchange for Preferred A Stock having an equivalent stated value.

D.       Payment of the DIP Facility evidenced by the TCB DIP Credit Agreement

On the Effective Date, the obligations evidenced by the TCB DIP Credit Agreement, to the extent drawn during the Case, shall be paid off in full.

E.       Issuance of New Equity

The issuance of the New Equity as contemplated by the Plan, by Reorganized Debtor is authorized without the need for any further corporate action or without any further action by a Holder of Claims or Interests. On the Effective Date, or as soon as reasonably practicable thereafter, the New Equity shall be issued to the DIP Lenders in accordance with the Plan.

F.       Section 1145 Exemption

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Equity as contemplated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, the New Equity, will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions, if any, on the transferability of such securities and instruments; and (4) applicable regulatory approval.

G.       Corporate Existence

Except as otherwise provided herein, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state law).

H.      New Certificate of Incorporation

On or immediately before the Effective Date, Reorganized Debtor will reincorporate in Delaware and file its new certificates of incorporation with the Delaware Secretary of State and/or other applicable authorities in its state of incorporation in accordance with the corporate laws of the state of incorporation. After the Effective Date, Reorganized Debtor may amend and restate its new certificates of incorporation and new by-laws and other constituent documents as permitted by the laws of its state of incorporation and its new certificates of incorporation and new by-laws.

I.      Reorganized Debtor's Board of Directors

To the extent known, the identity of the members of Reorganized Debtor's board of directors, which shall only come into effect after the Effective Date, and the nature and compensation for any member of the board who is an "insider" under section 101(31) of the Bankruptcy Code will be identified in a pleading filed with the Bankruptcy Court within ten (10) days of the Confirmation Hearing.

J.      Officers of Reorganized Debtor

To the extent known, the identity of the officers of Reorganized Debtor's, which shall only come into effect after the Effective Date, and the nature and compensation for any member of the board who is an "insider" under section 101(31) of the Bankruptcy Code will be identified in a pleading filed with the Bankruptcy Court within ten (10) days of the Confirmation Hearing.

K.      Vesting of Assets in Reorganized Debtor

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action (except those released pursuant to the Releases by the Debtors), shall vest in Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except for the Liens, Claims, charges and other encumbrances set forth in this Plan. On and after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided, however, the Bankruptcy Court shall retain jurisdiction as set forth in Article 11 hereof.

L.      Restructuring Transactions

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or

delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

M.      Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

N.      D&O Liability Insurance Policies

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtor if necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. On or before the Effective Date, the Reorganized Debtor may obtain reasonably sufficient tail coverage (i.e., D&O insurance coverage that extends beyond the end of the policy period) under a directors and officers' liability insurance policy for the current and former directors, officers, and managers for such terms or periods of time, and placed with such insurers, with the consent of the Requisite Initial Lenders, to be reasonable under the circumstances or as otherwise specified and ordered by the Bankruptcy Court in the Confirmation Order.

O.      Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Releases by the Debtors provided by Article III hereof), the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of

Action against them as any indication that the Debtors or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or Reorganized Debtor have released any Person or Entity on or before the Effective Date (including pursuant to the Releases by the Debtors or otherwise), the Debtors or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE 5
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      Record Date for Distributions

As of the entry of the Confirmation Order, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests. The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.      Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VI hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

C.      Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Entity designated by the Reorganized Debtor as a Disbursing Agent on the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise

ordered by the Bankruptcy Court. In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

D.    Rights and Powers of Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

E.    Distributions on Account of Claims Allowed After the Effective Date Payments and Distributions on Disputed Claims

Notwithstanding any other provision of the Plan, no distributions shall be made under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim. Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

F.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Reorganized Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

G.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.    Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtor or the applicable Disbursing Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor or the applicable Disbursing Agent, as appropriate, after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtor or the applicable Disbursing Agent, as appropriate, has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtor, and the applicable Disbursing Agent, as applicable, shall not incur any liability

whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable or has been claimed to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the Effective Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

H.      Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

I.      Setoffs

The Debtors and the Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtor may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtor of any such claims, equity interests, rights, and Causes of Action that the Debtors or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

**ARTICLE 6**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND  DISPUTED CLAIMS**

A.      Prosecution of Objections to Claims

The Debtors (before the Effective Date, in consultation with the Requisite Initial Lenders) or the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. From and after the Effective Date, the Debtors and the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Debtors reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

B.      Allowance of Claims and Interests

Except as expressly provided herein, no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided herein or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), the Reorganized Debtor after the Effective Date will have and retain any and all rights and defenses held by the Debtors with respect to any Claim as of the Petition Date. All claims of any Entity that owes money to the Debtors shall be disallowed unless and until such Entity pays, in full, the amount it owes the Debtors.

C.      No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

D.      Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

E.      Estimation of Claims

The Debtors (before the Effective Date, in consultation with the Requisite Initial Lenders) or Reorganized Debtor (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the

Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or the Reorganized Debtor (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

F.    Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court. Beginning on the last day of the first full calendar quarter that is at least 90 days after the Effective Date, the Reorganized Debtor shall File every calendar quarter a list of all Claims or Interests that have been paid, satisfied, superseded or amended during such prior calendar quarter.

G.    Deadline to File Objections to Claims.

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume filed on or before the Effective Date; including any amendments before the Effective Date. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions or rejections of such Executory Contracts and Unexpired Leases in the Plan are effective as of the Effective Date. Each such Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding the foregoing paragraph, after the Effective Date, the Reorganized Debtor shall have the right to terminate, amend, or modify any intercompany contracts, leases, or other agreements without approval of the Bankruptcy Court.

B.    Payments Related to Assumption of Executory Contracts and Unexpired Leases

With respect to any Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant hereto or otherwise, Cure Claims shall be satisfied, pursuant to section 365(b) of the Bankruptcy Code, by payment of the Cure Claims in Cash on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365(b) of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts or Unexpired Leases; provided, however, that the Debtors or the Reorganized Debtor may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

C.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtor expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtor, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

D.      Contracts and Leases Entered Into After the Petition Date

On and after the Effective Date, the Debtors may continue to perform under contracts and leases entered into after the Petition Date by any Debtor in the ordinary course of business, including any Executory Contracts and Unexpired Leases assumed by such Debtor.

E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is

rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.     Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

G.     Rejection Claims Bar Date

Notwithstanding anything herein to the contrary, any Creditor holding a Rejection Claim must File a Proof of Claim on account of such Claim with the Bankruptcy Court on or before the thirty (30) days after the Confirmation Date. All Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors or the Reorganized Debtor, their Estates, and their property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

## ARTICLE 8
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.     Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against them and Causes of Action against other Entities.

B.     Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties and the Debtors' former officers and directors are deemed released and discharged by the Debtors,

the Reorganized Debtor, and the Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtor, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party or a former officer or director of the Debtors that constitutes willful misconduct (including fraud) or gross negligence.

C.    Releases by Holders of Claims and Interests

As of the Effective Date, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtor, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors' Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan. Nothing in the Confirmation Order or the Plan shall affect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtors, the Reorganized Debtor, or Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtors, the Reorganized

Debtor or Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Debtors, the Reorganized Debtor and Released Parties. This paragraph, however, shall in no way affect or limit the discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

D.      Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtors and the Reorganized Debtor (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the New Commons Stock pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.      Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a

judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

F.    Injunction

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE VIII HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VII.B OR ARTICLE VII.C, DISCHARGED PURSUANT TO ARTICLE VII.E, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VII.E ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING AN INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN

CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS
RELEASED OR SETTLED PURSUANT TO THE PLAN.

 THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS
AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN
COMPLETE SATISFACTION OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE
WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY INTEREST ACCRUED ON
CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY
OF THEIR ASSETS, PROPERTY OR ESTATES. ON THE EFFECTIVE DATE, ALL SUCH
CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED,
AND THE EQUITY INTERESTS SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS
ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL
CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED,
AND THE EQUITY INTERESTS SHALL BE CANCELLED, AND THE DEBTORS'
LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY,
INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OF THE KIND SPECIFIED
UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS,
THE DEBTORS' ESTATES, THE REORGANIZED DEBTOR, EACH OF THEIR
RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND
PROPERTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY
DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR
OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE
EFFECTIVE DATE.

G.      Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or
stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or
any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any
injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force
and effect until the Effective Date. All injunctions or stays contained in the Plan or the
Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the
U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the
Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter,
franchise or other similar grant to, condition such a grant to, discriminate with respect to such a
grant against, the Reorganized Debtor or another Entity with whom such Reorganized Debtor
have been associated, solely because one of the Debtors has been a debtor under chapter 11, has
been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11

Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

     I.       Setoff and Recoupment

Except with respect to Claims or payments allowed in or provided for under the Plan, the Debtors may setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but the failure to do so shall not constitute a waiver or release by the Debtors or the Reorganized Debtor of any such claim it may have against such claimant. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or Reorganized Debtor unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise. In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtor unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

     J.       Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

     K.       Releases of Governmental Claims

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

## ARTICLE 9
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
## AND THE EFFECTIVE DATE

A.      Conditions Precedent to Confirmation

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.      Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article 9.C. hereof.

The Confirmation Order (a) shall be a Final Order in form and substance acceptable to the Debtors and (b) shall include a finding by the Bankruptcy Court that the Plan Securities to be issued on the Effective Date will be authorized and exempt from registration under applicable securities law pursuant to section 1145 of the Bankruptcy Code.

All actions, documents, certificates, and agreements necessary to implement this Plan, including the execution of the Contribution Agreement by the parties thereto and the Reorganized Debtor's receipt of the contributions specified in Section 4.2 and 4.3 of the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.      Waiver of Conditions

Except as otherwise provided herein the conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived at any time by the Debtors, provided, however, that the Debtors may not waive entry of the Order approving the Disclosure Statement, the Confirmation Order or any condition the waiver of which is proscribed by law; Any such waivers shall be evidenced by a writing, signed by the waiving parties, served upon the U.S. Trustee and Filed with the Bankruptcy Court. The waiver may be a conditional one, such as to extend the time under which a condition may be satisfied.

D.      Effective Date

The Effective Date shall be the later to occur of the date on which the Confirmation Order becomes a Final Order; provided, however, the conditions specified in Article IX.B. have been satisfied or waived.

E.      Effect of Failure of Conditions

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3)

constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE 10
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      Modification and Amendments

Except as otherwise specifically provided herein, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.      Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE 11
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims, Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with or under the Prepetition Security Agreement and related Intercreditor Agreement;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

16.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

21.     enforce all orders previously entered by the Bankruptcy Court;

22.     hear any other matter not inconsistent with the Bankruptcy Code; and

23.     enter an order concluding or closing the Chapter 11 Cases.

# ARTICLE 12
## MISCELLANEOUS PROVISIONS

### A.      Immediate Binding Effect

Subject to Article IX.B, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### B.      Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.      Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

### D.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### E.      Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor shall be served on:

Med-Depot, Inc. d/b/a Hospice Source
1200 Commerce St., Suite 100
Plano, Texas 75093

Attn: Jeff West

with copies to:

Bryan Cave, LLP
c/o Keith M. Aurzada
2200 Ross Ave., Suite 3300
Dallas, Texas 75201

After the Effective Date, the Debtors may, in their sole discretion, notify Entities that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Entities must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

F.       Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.       Severability of Plan Provisions

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without (a) the Debtors' consent

H.       Exhibits

All exhibits and documents included in the Plan and Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel or the Bankruptcy Court's web site at www.txeb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Plan Securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Plan Securities offered and sold under the Plan.

J.      Closing of Chapter 11 Cases

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

K.      Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

[Remainder of Page Intentionally Blank]

L.        Filing of Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated July 30, 2013.

*/s/ Jeff West*_____
Jeff West, Chief Executive Officer
Med-Depot Holdings, Inc. and
Med-Depot, Inc.

**Respectfully submitted,**

***/s/ Keith M.Aurzada*_____**
Keith M. Aurzada
State Bar No. 24009880
John C. Leininger
State Bar No. 24007544
Jay L. Krystinik
State Bar No. 24041279
Bryan Cave LLP
2200 Ross Ave., Suite 3300
Dallas, Texas 75201

Proposed Attorneys for Debtors-in-Possession